To this plea there was a general demurrer and joinder.

Mr. C. C. Lee and Mr. Jones, in support of the demurrer, contended that the defendant could not deny the guardianship without denying the record, by plea of nul tiel record.

Mr. Marbury, contra. It is not necessary that the plaintiff should show himself to be guardian by matter of record. He might have been guardian by other means; and the record does not show an appointment by the orphans' court. It is only where the cause of action, or matter of defence, is matter of record, that it is necessary to refer to the record, or to plead nul tiel record. It is like the plea of never administrator.

Mr. Redin, on the same side, cited 1 Chit. 481, and 2 Chit. 450, that the plea of nul tiel record only denies the existence of the record. If J. T. Ritchie might have been guardian, although there might have been no such record, nul tiel record would have been a bad plea. This court has decided, in the case of Mauro v. Ritchie [Case No. 9,312], that the appointment was absolutely void, because the judge of the orphans' court had not jurisdiction. It is therefore no record.

THE COURT (THRUSTON, Circuit Judge, absent) gave judgment for the defendant upon the demurrer:

1. Because, as the record set forth in the declaration, was not the foundation of the action, but was only matter of conveyance or inducement, the plea of nul tiel record was not an answer to the whole count; for the count avers letters of guardianship, and makes a profert of them; and non constat, that Ritchie was not guardian, although not appointed by the orphans' court, as is supposed to have been stated in the record set forth in the declaration; and notwithstanding the issue on the plea of nul tiel record, if it had been pleaded, might have been found for the defendant, the plaintiffs would not have been precluded from showing that Mr. Ritchie was guardian by other means.

2. Because nul tiel record is not a good plea where the record is "showed forth;" but the defendant may deny the operation thereof; namely, that the record does not show the appointment. Com. Dig. "Pleader" (2 W. 13); Young v. Pennington, Hardr. 158; System of Pleading, 368, 369; Eden's Case, 6 Coke, 15b, and Co. Litt. 260a, says, "If a grant, by letters patent under the great seal be pleaded and showed forth, the adverse party cannot plead nul tiel record; for that it appears to the court that there is such a record; but inasmuch as it is in the nature of a conveyance, the party may deny the operation thereof; therefore he may plead non concessit, and prove in evidence that the king had nothing in the thing granted, or the like; and so it was adjudged."

3. Because nul tiel record is not a necessary plea where the record is not the foundation of the action.

4. Because the record recited in the declaration does not purport to be an appointment of Mr. Ritchie, as guardian, and therefore the plea that he never was guardian, does not conflict with that record. The record only seems to take it for granted that he had been before appointed in some way not stated; perhaps by the infant himself. It is only an order that an existing guardian should give bond and security.

---

## Case No. 15,609.

### UNITED STATES v. LITTLE.

[1 Cranch, C. C. 411.] [1]

Circuit Court, District of Columbia. June Term, 1807.

#### CONSTABLE—FEES.

The constable is not entitled to any fee on an execution not served.

Indictment [against Israel Little] for taking illegal fees. The question was whether the constables are entitled to fifty cents for every execution returned, but not served. The act of congress says, for every execution served and returned.

THE COURT (nem. con.) decided that the constables were not entitled to any fee upon an execution unless it be served and returned.

---

## Case No. 15,610.

### UNITED STATES v. LITTLE.

[2 Wash. C. C. 159.] [2]

Circuit Court, D. Pennsylvania. April Term, 1808.

#### WITNESS—PROCESS AGAINST—CONTINUANCE.

The court continued the cause, on the application of the defendant, a witness being absent in New Jersey; on the ground, that a state magistrate cannot issue process, for defendant's witnesses, into another state.

Indictment for a misdemeanour. The defendant was bound over by a state magistrate, and the recognizance, being returned into court, a bill was found this term. The defendant moved for a continuance, on the ground that his material witness left Philadelphia, before he was bound over, and went to New Jersey; and that, notwithstanding all his inquiries, he has not been able to hear of, or find him. The question was, whether the defendant had not been negligent, in not obtaining compulsory process, for the witness, from the magistrate who took the recognizance.

Mr. Hopkinson, for defendant, contended that the magistrate who binds over, cannot

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

issue process for the defendant's witnesses; but still less can he bind over the defendant's witnesses to appear at court. But, even if a judge of this court could have done this, which he denied, and stated this to be the practice of the state; still it is clear, that a state judge could not send process into Jersey. The defendant could not get process from the clerk of this court, until the bill is filed; or at any rate, until the recognizance is returned to it.

Mr. Dallas, contra. The right of the defendant to compulsory process is under the constitution; and if he cannot procure it from the examining magistrate, he may entirely lose the benefit of his testimony. He stated the practice differently from Mr. Hopkinson.

BY THE COURT. The objections to a state magistrate issuing process into New Jersey, are conclusive.

The cause was continued.

UNITED STATES (LITTLE v.). See Case No. 8,396.

## Case No. 15,611.
### UNITED STATES v. The LITTLE ANN.
[2 Hall, Law J. 457.]

District Court, D. New York. Aug. Term, 1809.[1]

UNLAWFUL EXPORTATION—FORFEITURE OF VESSEL AND CARGO.

[A vessel, having the president's permission to proceed to the West Indies for American property, condemned, with her cargo, for having on board other merchandise besides that permitted.]

[This was a libel of forfeiture filed against the brig Little Ann and cargo on the ground of attempting an unlawful exportation of merchandise from the United States.]

The brig, having the president's permission to proceed to the West Indies for American property, sailed from Bristol in the state of Rhode Island, and when at sea off the east end of Long Island was captured by the United States frigate Chesapeake and sent into this port for trial. Besides the articles of permitted stores there were found on board other goods, and the libel charged her with lading on board merchandise in the nighttime without the permit of the collector or the inspection of a customhouse officer and of exporting the same.

The judge condemned the vessel and cargo on the ground of an unlawful exportation from the United States, and decreed restitution of the articles which were permitted by the collector as necessary stores for the voyage, and laden under proper inspection.

[The decree in this case was reversed, upon appeal, by the circuit court. Case No. 8,397.]

[1] [Reversed in Case No. 8,397.]

## Case No. 15,612.
### UNITED STATES v. The LITTLE CHARLES.
[1 Brock. 347.] [1]

Circuit Court, D. Virginia. May 27, 1818.

EMBARGO—REPORT OF MASTER—LIBEL—CHARACTER OF VESSEL—EXCEPTIONS IN STATUTE.

1. A libel against a vessel for violating the embargo laws, must contain a substantial statement of the offence, and it must be made with reasonable precision. But, inasmuch as the embargo act of December, 1807 [2 Stat. 457], prohibits all vessels, whether foreign or domestic, registered, or coasting vessels, from sailing to any foreign port or place, and the supplemental act of January, 1808, annexes the penalty of forfeiture to any vessel which violates either act, it is not necessary that the libel should set forth the particular character of the vessel.

2. The exception in the act exempting foreign vessels from its penalties, in certain cases, need not be noticed. The libel is good, though it does not charge that the vessel libelled, was not embraced within the exception.

3. A vessel is charged with having violated the embargo acts, in departing from a port of the United States, and proceeding to Antigua. The proof is, that she was at Camden, in North Carolina, in December, 1807, and January, 1808, and was in the port of Norfolk, in April, 1808. Held, that the report and manifest of her cargo, with the affidavit made by the captain, before the collector at Norfolk, which is adduced as proof, that she took in her cargo at Antigua, is admissible evidence.

4. These documents constitute one entire transaction; they need not the entry of the ship to make it complete.

5. In a prosecution against the ship itself, a forfeiture is incurred by her violation of the act, whether with, or without the authority of the owner. The vessel is put in action by the crew, who are guided by the master; she acts, and speaks by the master, and reports herself by the master; she is, therefore, affected by his report, whether the owners be so affected or not. But the owner is properly affected by it. The master is selected by the owner as his agent, amongst other things, for reporting the vessel. The report is prescribed by law. It must state, truly, the voyage, and the place from which she last sailed. The owner then has authorized the master to make the report, and though he may controvert it, yet it is prima facie evidence.

[Cited in U. S. v. Hall, Case No. 15,281; U. S. v. The Malek Adhel, 2 How. (43 U. S.) 234; Jecker v. Montgomery, 18 How. (59 U. S.) 116. Applied in Dobbins v. U. S., 96 U. S. 401. Cited in U. S. v. Hutchinson, Case No. 15,431.]
[Cited in Boggs v. Com., 76 Va. 994.]

6. After a vessel has been seized and libelled, and a forfeiture claimed, the court of admiralty does not lose its jurisdiction to condemn the vessel, by losing possession of it.

[Followed in Otis v. The Rio Grande, Case No. 10,613.]
[Cited in U. S. v. Mackoy, Case No. 15,696.]

[Appeal from the district court of the United States for the district of Virginia.]

The schooner Little Charles, with her tackle, apparel, and furniture, was seized in the port of Norfolk, in 1808, as forfeited to the United States, by reason of an alleged violation of the embargo laws. The attorney for the United States, filed his libel

[1] [Reported by John W. Brockenbrough, Esq.]